UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RONALD HAVARD | CIVIL ACTION |
| v. | NO. 14-824 |
| OFFSHORE SPECIALTY FABRICATORS, LLC | SECTION F |

<u>ORDER AND REASONS</u>

Before the Court is Steamship Mutual Underwriting Association Limited's motion to compel arbitration and stay litigation. For the reasons that follow, the motion is GRANTED.

**Background**

This is a Jones Act personal injury case. On January 24, 2014 Ronald Havard was working as a seaman for Offshore Specialty Fabricators, LLC aboard the *Betty "R" Gamberlina* when a tow cable broke, causing him to fall and injure his back and other parts of his body.

Havard sued Offshore Specialty Fabricators, LLC ("OSF"), his employer and the owner and operator of *Betty "R" Gamberlina*, alleging Jones Act negligence, negligence under general maritime law, unseaworthiness, and entitlement to maintenance and cure. OSF later filed for bankruptcy and the matter was stayed. The bankruptcy stay was lifted in December 2018. On May 30, 2019, on the eve of trial, Havard filed a first amended complaint, adding

1

Steamship Mutual Underwriting Association Limited ("Steamship") as a direct defendant pursuant to the Louisiana Direct Action Statute, La. Rev. Stat. Ann. § 22:1269.[1]  Trial was continued. Steamship now seeks an order compelling arbitration and requests that this litigation be stayed.

I.

*A.*

Determining the arbitrability of disputes governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards is well settled.[2]

> The Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention") governs cases in which a party seeks to compel arbitration outside of the United States. The United States joined the Convention in 1970. Congress implemented the Convention by enacting Chapter 2 of Title 9 of the United States Code ("the Convention Act").  The Supreme Court has explained that "[t]he goal of the Convention was to encourage the recognition and enforcement of commercial

---

[1] At the time of Havard's alleged accident, Steamship, a P&I Club, provided P&I (Protection & Indemnity) insurance coverage to OSF and the *Betty "R" Gamberlina*.  Regarding similar insurance arrangements:
> [T]he insurer is an association of shipowners who engage in providing insurance. The association is referred to as the club, and the insured is the member. To obtain coverage, the member enrolls a vessel with the club. The rules of the club and the quotation are the contract of insurance.

Triton Lines, Inc. v. Steamship Mut. Underwriting Assoc. (Bermuda) Ltd., 707 F. Supp. 277, 278 (S.D. Tex. 1989).

[2] The governing law was aptly summarized by another Section of Court considering overlapping issues; because the parties here do not dispute these settled principles, the Court merely reproduces this summary for context.

2

> arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." The Convention applies to arbitration agreements between citizens of nations that are signatories to the Convention. The United States, Luxembourg, and England are all signatories.
> "The Convention Act incorporates the entire Federal Arbitration Act ("FAA") to the extent that the two do not conflict. The FAA governs the validity and enforceability of an agreement to arbitrate in the United States and explicitly applies to any maritime transaction. A district court's power to order arbitration under the FAA, however, is limited to arbitrations that will take place "[w]ithin the district in which the petition for an order directing such arbitration is filed." As a result, the Convention governs when a party seeks to compel arbitration outside the United States."

Authenment v. Ingram Barge Co., 878 F. Supp. 2d 672, 676-77 (E.D. La. 2012)(internal citations, quotations omitted)(Milazzo, J.).

The Convention and the Convention Act do not explicitly authorize a stay of litigation pending arbitration. Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd., 601 F.3d 329, 332 (5th Cir. 2010). Nevertheless, "parties whose arbitration agreements fall under the Convention have had to seek authority for stays" under the FAA, 9 U.S.C. § 3. Id. Under the Convention and the FAA, arbitration must be compelled "if there is a) an agreement in writing to arbitrate the dispute; b) the agreement provides for arbitration in the territory of a Convention signatory; c) the agreement arises out of a commercial legal relationship; and d) a party to the agreement is not an American

3

citizen." Francisco v. Stolt Achievement MT, 293 F.3d 270, 273 (5th Cir. 2002). There is no dispute that these criteria are met here.

*B.*

The Louisiana Direct Action Statute allows a plaintiff to "proceed directly against tortfeasors' insurers in certain circumstances." Todd v. Steamship Mut. Underwriting Ass'n, Ltd., 601 F.3d 329, 333 (5th Cir. 2010)(citing La. Rev. Stat. Ann. § 1269). Nonsignatories (such as direct action plaintiffs) to arbitration agreements may still be compelled to arbitrate despite not being a party to the agreement. Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630 (2009). The "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" Id. at 631.

Thus, a plaintiff-nonsignatory can be compelled to arbitrate under federal law. Authenment, 878 F. Supp. 2d at 680. Under a direct-benefits estoppel theory, a plaintiff is estopped from "avoiding arbitration clauses in contracts they seek to otherwise enforce." Todd, 2011 WL 1226464 at *7. Direct-benefit estoppel is applied when a non-signatory "knowingly exploits the agreement

4

containing the arbitration clause." Hellenic Inv. Fund, Inc. Det Norske Veritas, 464 F.3d 514, 518 (5th Cir. 2006).

Direct action plaintiffs do not have an independent cause of action but instead have a procedural right of action against the insurer "'where the plaintiff has a substantive cause of action against the insured.'" Todd, 2011 WL 1226464 at *7 (quoting Descant v. Admin. Of Tulane Educ. Fund, 93-3098 (La. 7/5/94); 639 So. 2d 246, 249). As such, the direct action plaintiff stands in the shoes of the insured (OSF) and is bound by the terms of its agreement with the insurer (Steamship). See id.

In Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd., the Fifth Circuit addressed whether nonsignatories can be bound to arbitrate based on arbitration agreements between insurers and employers who liable in tort. 601 F.3d at 330. The Fifth Circuit determined that nonsignatories can be bound to arbitrate depending on several considerations. Id. at 336. These considerations include: (1) whether the agreement includes terms that bind nonsignatories; (2) what law applies in determining whether the arbitration agreement can be enforced; and (3) whether the plaintiff's claims fall within the scope of the arbitration agreement between the parties. Id.

5

II.

The plaintiff does not dispute arbitrability – that Steamship is entitled to an order compelling arbitration and a stay of this litigation. Because the parties agree that this issue would be determined consistent with Todd and Authenment, the Court finds as a threshold matter that Havard as a nonsignatory is bound by the arbitration agreement between Steamship and OSF. Rather than challenging whether arbitration is appropriate, Havard takes issue with *where* arbitration is reasonable. The plaintiff opposes being haled to arbitrate in England, in accordance with the forum selection clause in the agreement between Steamship and OSF; he prefers to arbitrate his claims in Louisiana. Thus, the Court considers whether the forum selection clause is enforceable against the plaintiff. It is.

Rule 47 of Steamship's Rules for the relevant 2013/2014 policy year expressly provide that third party nonsignatories are bound by the Rules, that English law applies to disputes, and that any dispute shall be brought either before the High Court of Justice in London or to arbitration in London. Despite this contractual selection of London, England as the exclusive forum for resolving any disputes, the plaintiff insists that the forum selection clause should not be enforced.

Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) (footnotes omitted). A strong showing is necessary to show that it would be unreasonable to enforce the clause under the circumstances of the case. St. Tammany Parish School Bd. v. Siemens Industry, Inc., No. 14-1881, 2014 WL 4425791 at *1 (E.D. La. 2014).

The plaintiff invokes M/S Bremen v. Zapata Off-Shore Co., 407 U.S. at 16-17, to support his contention that the forum selection clause is unreasonable. Courts have distilled from Bremen these factors to consider when determining reasonableness of forum selection clauses: (1) whether the forum selection clause was incorporated into the agreement as a result of fraud of overreaching; (2) whether the party challenging the forum selection clause will be deprived of their day in court because the forum selection clause is gravely inconvenient or unfair; (3) if there is fundamental unfairness that will deprive the plaintiff of a remedy; and (4) whether public policy of the forum state is contravened by the enforcement of the forum selection clause. Calix-Chacon v. Global Intern. Marine, Inc., 493 F.3d 507, 511 (5th Cir. 2007). Havard underscores the inconvenience factor, invoking Bremen's example of an "agreement between two Americans

to resolve their essentially local disputes in a remote alien forum" as a rationale for why the forum selection clause may not be enforceable here.  M/S Bremen, 407 U.S. at 17. He claims that this dispute is a local one, where he was injured in waters off the coast of Louisiana by a Louisiana tortfeasor and that the witnesses are local to Louisiana, Texas, and Mississippi. The plaintiff claims neither he, nor his claim, have any connection to England and that he lacks the financial resources to travel oversees to arbitrate.

Steamship counters that this is not an exceptional case and, in fact, none of Bremen factors favor invalidation of the designated forum.  The Court agrees. Although the incident is local, the plaintiff has sued an England-based defendant. The plaintiff opted to add Steamship as a defendant, knowing that Steamship is a United Kingdom insurer.  Thus, this is not the case of two Americans resolving their local disputes in a remote forum, but, instead, an American plaintiff and an English defendant resolving their dispute in England.  To be sure, the plaintiff seeks to enforce the terms of the Steamship-OSF contract; and that contract designates England as the proper forum for resolution of disputes.

The plaintiff's claim that he is unable financially to proceed in England is not sufficient to show that the forum selection

clause is unreasonable. The plaintiff offers no support for his assertion, noting simply that it will be expensive to travel. But the Fifth Circuit has declined to speculate that being compelled to litigate in a designated forum necessarily requires that parties and witnesses be physically present there. "[W]ith [the] modern conveniences of electronic filing and videoconferencing, '[a] plaintiff may have his "day in court" without ever setting foot in a courtroom.'" Calix-Chacon, 493 F.3d at 515 (citing Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 11 (2d Cir. 1995)). That the cost of litigation in England may be higher than proceeding in Louisiana is not alone enough to invalidate the forum selection clause. See McQuillan v. Norwegian Cruise Line, No. 14-1195, 2014 WL 5305792, at *4 (E.D. La. 2014)("Although plaintiff's costs may be higher in Florida than in Louisiana, that factor alone is not enough to invalidate the forum selection clause."). Financial hardship is not enough to render a prima facie valid forum selection clause unenforceable. And he offers no other Bremen factors that might persuade the Court to invalidate the forum selection clause. The plaintiff fails to make the clear showing required to overcome the presumption of the forum selection clause's enforceability.

The plaintiff added Steamship as a defendant in this litigation, yet he is displeased by the forum selection clause included in the insurance agreement between Steamship and OSF.

9

"Plaintiff cannot embrace the contract when it works to his benefit and repudiate the contract when it works to his detriment." Authenment, 878 F. Supp. 2d at 681. Although arbitrating in London may be inconvenient for the plaintiff, he has failed to carry his heavy burden to persuade the Court that enforcing the forum selection clause is unreasonable.

Accordingly, IT IS ORDERED: that the defendant's motion to compel arbitration and stay litigation is GRANTED. The Clerk of Court shall stay this case and close it administratively.

New Orleans, Louisiana, November 21, 2019

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE